IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JULIANA BARRIENTOS, | |
| Plaintiff, | |
| v. | No. 21-cv-05160 |
| | Judge Franklin U. Valderrama |
| WILLIAMS-SONOMA, INC., | |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

The Fair and Accurate Credit Transactions Act (FACTA) amendment to the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681c(g), prohibits merchants from printing more than the last five digits of the consumers' credit or debit card number or the expiration date on the receipt. Plaintiff Juliana Barrientos (Barrientos), on behalf of herself and all others similarly situated, sued Defendant Williams-Sonoma, Inc. (Williams) in the Circuit Court of Cook County, Illinois, alleging that Williams provided her with a receipt that bore ten digits of her debit card number in violation of FACTA. Williams removed this suit to federal court asserting the Court's jurisdiction under 28 U.S.C. § 1331. Before the Court is Barrientos' motion to remand the case to the Circuit Court of Cook County under 28 U.S.C. § 1447(c) based on the Court's lack of subject matter jurisdiction. R.[1] 15, Mot. Remand. For the following reasons, the Court grants Barrientos' motion to remand, but denies Barrientos' motion for fees.

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

## Background

In August 2021, Barrientos used her personal debit card to make a purchase at Pottery Barn, one of Williams' retail stores, in Skokie, Illinois.[2] R. 1-1, Compl. ¶ 8. At the time of purchase, Barrientos was given an electronically printed receipt that bore the first six and last four digits (ten digits in total) of Barrientos' debit card number. *Id.* ¶ 29.

Barrientos filed this putative class action[3] lawsuit against Williams in the Circuit Court of Cook County asserting that not only did Williams' conduct constitute a violation of FACTA, but also a breach of confidence in the safe handling of her account information and invasion of privacy as a result of the disclosure of her account information. *See* Compl. Williams removed the suit to federal court pursuant to 28 U.S.C. § 1441, claiming the Court has subject matter jurisdiction over the suit under 28 U.S.C. § 1331. R. 1, Not. of Removal. Barrientos now moves to remand the suit to the Circuit Court of Cook County based on the Court's lack of subject matter jurisdiction under 28 U.S.C. § 1447(c). *See* Mot. Remand. Barrientos also seeks an

---

[2]In considering a motion to remand, the Court "assumes the truth of the operative complaint's allegations at the time of removal, but may also consider facts set forth in the notice of removal." *Curry v. Boeing Co.*, 542 F. Supp. 3d 804, 808 (N.D. Ill. 2021) (citations omitted).

[3]Barrientos proposes a class consisting of "[a]ll natural persons domiciled in the United States . . . who, from within two years preceding the filing of this Complaint . . . to the certification of the class, engaged in one or more transactions using a debit card or credit card at a retail location owned by Williams-Sonoma, Inc., at a time when the point-of-sale system used to process the transaction was programmed to print more than the last five digits or the expiration date of debit and credit cards used in the transaction on the customer's receipt." Compl. ¶ 45.

award of attorneys' fees and costs incurred due to Williams' unreasonable removal. *Id.* at 8–9.

## Legal Standard

Federal courts are courts of limited jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). A case may only be brought before the federal court, as deemed by Congress, when such a cause of action arises under a federal question, 28 U.S.C. § 1331, or where there is diversity of citizenship and an amount-in-controversy exceeding $75,000, *id*. § 1332(a); *see Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019).

Regarding federal question jurisdiction, "there is no serious debate that a federally created claim for relief is generally a 'sufficient condition for federal-question jurisdiction,'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 377 (2012). And "when federal law creates a private right of action and furnishes the substantive rules of decision, the claim arises under federal law, and district courts possess federal-question jurisdiction under § 1331." *Id.* at 378–379.

A defendant may remove to federal court any action filed in state court that could have originally been filed in federal court. 28 U.S.C. § 1441(a); *Tylka v. Gerber Prods. Co.*, 211 F.3d 445, 448 (7th Cir. 2000). "Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Doe v. Allied–Signal*, Inc., 985 F.2d 908, 911 (7th Cir. 1993). "The removing party bears the burden of demonstrating the propriety of removal, and any doubt regarding jurisdiction should be resolved in favor of remand." *Schur v. L.A. Weight Loss Ctrs.,*

*Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). At any time before final judgment, the court may remand a case for lack of subject matter jurisdiction. 28 U.S.C. § 1447(c).

## Analysis

Barrientos brings this suit under Section 1681c(g)(1) of FACTA, which provides:

> no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

15 U.S.C. § 168lc(g)(1).

Congress enacted FACTA in 2003 as an amendment to the FCRA, that combats "the increasing threat of identity theft." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 725 (7th Cir. 2016). "To that end, Congress specifically targeted two types of potentially misappropriateable information produced in credit and debit card receipts: (1) the digits of the credit card number and (2) the expiration date." *Lindner v. Roti Rests., LLC*, 2017 WL 3130755, * 5 (N.D. Ill. July 24, 2017) (quoting *Meyers v. Oneida Tribe of Wis.*, 836 F.3d 818, 820 (7th Cir. 2016). A willful violation of FACTA entitles consumers to recover either "any actual damages sustained . . . as a result" of the violation or "damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A),(3).

Barrientos seeks remand of this case to state court, contending that she does not allege any injury in fact and as such, the Court lacks subject matter jurisdiction. Williams disagrees and insists that Barrientos has alleged an injury in fact that satisfies Article III standing.

4

## I.     Article III Standing

Article III of the Constitution limits the jurisdiction of the federal courts to "cases" and "controversies." U.S. CONST. art. III, § 2. "The case-or-controversy requirement ensures that the judiciary 'confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved.'" *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 937 (7th Cir. 2022) (quoting *Genesis Healthcorp. v. Symczyk*, 569 U.S. 66, 71 (2013)). "The requirement that litigants possess standing ensures that courts do not decide abstract principles of law but rather concrete cases and controversies." *Meyers*, 843 F.3d at 726[4] (cleaned up)[5]. Thus, "standing is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action." *Id.* (cleaned up).

Article III standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). The injury-in-fact inquiry "asks whether the plaintiff has suffered an invasion of a legally protected interest that is concrete and

---

[4] The Court refers to *Meyers v. Nicolet Rest. of De Pere, LLC* when using the short citation or name, "*Meyers*." It uses the full case name *Meyers v. Oneida Tribe of Wis.* when referring to that case.

[5] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

particularized and actual or imminent, not conjectural or hypothetical." *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151–52 (7th Cir. 2020) (cleaned up). A concrete injury "must actually exist" and must be "real and not abstract." *Spokeo*, 578 U.S. at 340. Even in the context of statutory violations, as alleged here, Article III standing must exist. *Id.* at 341. The removing party bears the burden of demonstrating that at the time of removal the plaintiff had such standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021).

In a strange turn of events—albeit it a common one in FACTA cases removed to federal court—it is the plaintiff, Barrientos, and not the defendant, Williams, who argues that she has not alleged an injury in fact and therefore, there is no Article III standing. Mot. Remand at 3. Barrientos points out that her complaint merely alleges a FACTA violation, which, without more, is insufficient to confer Article III standing. *Id.* at 3–4. To have Article III standing, asserts Barrientos, she must have suffered a concrete injury beyond a violation of her rights under FACTA. *Id.* at 6 (citing *TransUnion,* 141 S. Ct. at 2205). Barrientos maintains that under Seventh Circuit precedent, claims for statutory damages under FACTA are insufficient to confer Article III standing. Mot. Remand at 3–4 (citing *Meyers*, 843 F.3d at 728–29). In addition to the Seventh Circuit, several other circuit courts, submits Barrientos, also have held that statutory violations of FACTA alone do not confer Article III standing. *Id.* at 4–5 (citing, among other cases, *Katz v. Donna Karan Co., Store, L.L.C.* 872 F.3d 1114 (2d Cir. 2017); *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102 (3d Cir. 2019);

6

*Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 921 (11th Cir. 2020); *Thomas v. Toms King (Ohio II), LLC.*, 997 F.3d 629 (6th Cir. 2021); *Basset v. ABM Parking Services, Inc.,* 883 F.3d 776 (9th Cir. 2018)). Barrientos further points to several opinions from within this District, which stand for the same proposition. *Id.* at 5 (citing *Donahue v. Everi Payments, Inc.*, 2019 WL 13253793, at *3 (N.D. Ill. Aug. 19, 2019) (following a Section 1331 removal, printing eight digits of a credit card number on a receipt did not confer Article III standing, where the defendant's main argument for standing was plaintiff's allegation of disclosure of private information to employees and breach of privacy)); R. 33, Pl.'s 2d Suppl. Auth.[6] (citing *Blanco v. Bath & Body Works, LLC*, 2022 WL 1908980, at *4 (N.D. Ill. June 3, 2022) (following a Section 1331 removal, printing ten digits of a credit card number on a receipt did not confer Article III standing, where the defendant's main argument for standing was plaintiff's allegation of monetary harm)). Finally, Barrientos emphasizes that there is a presumption of remand if there is any doubt regarding jurisdiction. Mot. Remand at 7 (citing *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)).

Predictably, Williams disagrees. As an initial matter, Williams asserts that the Seventh Circuit has yet to address whether the printing of ten digits of a debit or credit card on a receipt constitutes a concrete injury. R. 29, Resp. at 3. *Meyers*, submits Williams, is not controlling because there the Seventh Circuit "merely held

---

[6]During and after briefing was completed, Barrientos filed numerous notices of supplemental authority in support of her argument: R. 24-1, *Connie Colin v. Alpargatas USA, Inc.*, No. 2:21-cv-09394-GW-E (C.D. Calif. Feb. 4, 2022); R. 33-2, *Blanco*, 2022 WL 1908980, at *4; R. 37-1, *Kamel v. Hibbett, Inc.*, 2022 WL 2905446, at *1–2 (C.D. Cal. July 22, 2022); R. 42-1, *Parrish v. Everi Payments Inc.*, 2023 WL 3276400, at *2 n.3 (D. Nev. May 4, 2023). Williams responded to each notice of supplemental authority. R. 35, R. 36, R. 38, R. 44.

'that without a showing of injury apart from the statutory violation, the failure to truncate a credit card's *expiration date* is insufficient to confer Article III standing' in a FACTA case." *Id.* (quoting *Meyers*, 843 F.3d at 728–29) (emphasis in Response). In the absence of any Seventh Circuit authority on this particular alleged FACTA violation, posits Williams, Barrientos only relies on out-of-circuit decisions which are inapplicable because those cases, precede the Supreme Court's landmark decision in *TransUnion LLC*, 141 S. Ct. 2190, and rely on the procedural-substantive framework eliminated by *TransUnion*. Resp. at 3–4 (citing *Thornley*, 984 F.3d at 1246 (eliminating the procedural and substantive violation distinction, declaring that "Article III must be satisfied no matter what kind of violation is asserted").

Williams insists that the allegations in Barrientos' complaint satisfy Article III's standing requirement. Not. Removal ¶ 9. Williams emphasizes Barrientos' statutory right to receive a receipt compliant with FACTA at the point of sale. *Id.* ¶ 10. Therefore, reasons Williams, the non-compliant receipt, coupled with other alleged harms (such as the elevated risk of identity theft), constitutes "the concrete injury that FACTA intended to protect against," thereby conferring Article III standing. *Id.* ¶¶ 9–10 (citing *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626–27 (7th Cir. 2020) (the court found in a case removed pursuant to the Class Action Fairness Act that Article III standing existed where defendant had collected a customer's fingerprints without written consent required by statute)). Even more so, Williams contends that Barrientos' FACTA injuries, albeit intangible, are concrete because they resemble harms traditionally recognized in American history and at common

8

law, such as breach of confidence, breach of implied bailment, and disclosure of private information.[7] Resp. at 5–6.

The Court begins its analysis with *Meyers v. Nicolet Rest. of De Pere*, as the parties disagree whether *Meyers* is controlling precedent. In *Meyers*, as in this case, the plaintiff brought a class action claim against the defendant alleging a violation of 15 U.S.C. § 168lc(g) where the defendant gave plaintiff a receipt that did not truncate the expiration date on plaintiff's credit card. 843 F.3d at 725. The Seventh Circuit dismissed the suit for lack of jurisdiction, holding that "without a showing of injury apart from the statutory violation, the failure to truncate a credit card's expiration date is insufficient to confer Article III standing." *Id.* at 728–29. The Seventh Circuit found the plaintiff's allegations insufficient to satisfy the injury-in-fact requirement

---

[7]Williams repeatedly argues, in response to Barrientos' notices of supplemental authority, but nowhere in its notice of removal or response, that because Barrientos pleads a concrete monetary harm, Compl. ¶ 1 ("The burden of having to keep or destroy the receipt to prevent further disclosure of their account information, and monetary harm from paying for what was supposed to be a secure and legally compliant transaction."), this case is distinguishable from cases that hold untruncated debit or credit card numbers on their own are not enough for standing under FACTA. R. 35, Def.'s Resp. 1st Suppl. Auth. at 1–2 ("*TransUnion* held very clearly that if a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."") (cleaned up); R. 36, Resp. 2d Suppl. Auth. at 1 (arguing that the court in *Blanco*, 2022 WL 1908980 incorrectly disregarded the plaintiff's allegation of monetary harm); R. 38, Resp. 3d Suppl. Auth. at 1 (distinguishing present case from *Kamel*, 2022 WL 2905446 because the plaintiff in *Kamel* did not allege monetary harm). As an initial matter, by failing to raise its argument that Barrientos pleads a concrete monetary harm until its responses to Barrientos' notices of supplemental authority, Williams has waived the argument. *Narducci v. Moore*, 572 F.3d 313, 323 (7th Cir. 2009). Even if Williams had properly raised the argument earlier, the Court finds it unpersuasive. The complaint explicitly states that although Barrientos has "experienced actual harm . . . this suit seeks only statutory damages . . . due to the difficulty of quantifying the harm cause[d]." Compl. ¶ 49. The Seventh Circuit in *Collier* held that simply referring to "actual damages" in the complaint fell "far short of an allegation that the plaintiffs suffered a concrete harm or appreciable risk of harm apart from the statutory violation." 889 F.3d at 896. Conclusory statements are therefore not enough to establish a monetary harm.

9

of Article III because the plaintiff's allegations revealed that plaintiff did not suffer any harm because of the defendant's printing of the expiration date on his receipt. *Id.* at 727. Nor did the violation, according to the court, create any appreciable risk of harm. *Id.*

True, as Williams points out, *Meyers* involved the failure to truncate the expiration date of a credit card on a receipt rather than the printing of ten digits of a debit card on a receipt, as Barrientos alleges here. But the Court sees no cogent basis to distinguish the two situations. "*Meyers* drew no distinction between these two types of violations as they relate to standing," as Barrientos points out, and it would not "have made sense for the court to draw such a distinction when the statute does not." Reply at 4. Williams has provided no basis for the Court to find that the analysis in *Meyers* (an expiration date case) is not instructive here (a card number case). Indeed, numerous courts within this District have relied on *Meyers,* an expiration date truncation case, to determine whether the display of more than five debit or credit card numbers on a receipt in violation of FACTA constitutes an injury in fact. *See Linder v. Roti Rests., LLC*, 2017 WL 3130755, at *3 (N.D. Ill. July 24, 2017) (holding that plaintiff lacked Article III standing where plaintiff alleged only that defendant did not properly truncate card numbers on a receipt); *Paci v. Costco Wholesale Corp.*, 2017 WL 1196918, at *3 (N.D. Ill. Mar. 30, 2017) (same); *Soto v. Great Am. LLC*, 2018 WL 2364916, at *3 (N.D. Ill. May 24, 2018) (same); *Donahue*, 2019 WL 13253793, at *3 (same). Admittedly, all of these cases were decided before

10

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). The Court now turns to *TransUnion.*

In *TransUnion,* the plaintiffs were a class of individuals who sued TransUnion, a credit reporting agency, after their credit reports contained a false notice that the individuals were considered national security threats. 141 S. Ct. at 2200. The plaintiffs alleged two violations of the FCRA. First, TransUnion failed to follow reasonable procedures to ensure accuracy of the plaintiffs' credit files, leading to an inaccuracy in their credit reports. *Id.* Second, TransUnion failed to follow the FCRA's requirement of providing a summary of their rights with each written disclosure. *Id.* at 2201–01. The issue before the Supreme Court was whether all of the class members' injuries arising from TransUnion's alleged statutory violations had suffered an injury in fact supporting Article III standing. The Supreme Court began its analysis by considering the characteristics that make a harm "concrete" for purposes of Article III standing. *Id.* at 2201. The Court explained that whether an intangible harm qualifies as "concrete" hinges on whether the "alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 2204 (citing *Spokeo*, 578 U.S. at 341). The Court recognized that physical and monetary harms, along with other traditional tangible harms, readily qualify as concrete harms, and that certain intangible harms, such as reputational harm, qualify as well. *Id.* The Court then turned to the plaintiffs' claim that TransUnion's failure to use reasonable procedures led to inaccuracy in their credit files. The Court divided the classes into two groups: those members whose

11

credit reports were disseminated to third-party businesses and those whose credit reports never left TransUnion's internal files. *Id.* at 2200. The Court found that the first group, whose reports were transmitted to third parties "suffered a harm with a close relationship to the harm associated with the tort of defamation," and therefore, suffered a concrete harm that qualifies as an injury in fact. *Id.* at 2209 (cleaned up). The second group, however, whose credit reports were not shared with third parties suffered no concrete harm because "[p]ublication is essential to liability in a suit for defamation" and their credit files were never published. *Id.* (cleaned up).

Williams urges the Court to ignore the cases cited by Barrientos that hold a statutory violation under FACTA is not enough to constitute an injury in fact because they are pre-*TransUnion* cases that rely on the procedural-substantive framework that *TransUnion* eliminated. Resp. at 4 ("[T]his Court should not look to noncontrolling, pre-*TransUnion* caselaw to determine whether [Williams'] alleged FACTA violation inflicted a concrete injury on [Barrientos] sufficient for Article III standing."). But Williams does not explain how the *TransUnion* decision and the elimination of the procedural-substantive framework affects *Meyers'* analysis. *Id.* The Supreme Court in *TransUnion* effectively limited Article III standing to plaintiffs who have suffered concrete, appreciable harms, in addition to a statutory violation. 141 S. Ct. 2190 (2021). Thus, every statutory harm must be accompanied by a concrete harm—whether tangible or not—that is both actual or "sufficiently imminent and substantial." *Id.* at 2210–11. For situations in which a court has decided that a statutory violation is merely procedural and needs an additional harm,

the Court's analysis does not change. This is the case with the Seventh Circuit's decision in *Meyers*, 843 F.3d 724. *TransUnion* has no substantive effect on its holding. Nonetheless, *Meyers* has limited utility for the Court's analysis because the pre-*TransUnion* decision in *Meyers* did not (nor did it have to) grapple with whether alleged intangible harms that are analogous to common law harms satisfy the injury-in-fact requirement.

As discussed above, a "concrete injury is required even in the context of a statutory violation." *Meyers*, 843 F.3d at 727. When Congress creates a statutory right that is intangible, as is here, the plaintiff must still satisfy the injury-in-fact requirement. *Spokeo*, 578 U.S. at 340. "Congress does not have the final word on whether a plaintiff has alleged a sufficient injury for the purposes of standing because not all inaccuracies cause harm or present any material risk of harm." *Meyers*, 843 F.3d at 727. And "'concrete' is not, however, necessarily synonymous with 'tangible' . . . intangible injuries can nevertheless be concrete." *Spokeo,* 578 U.S. at 340. An intangible harm is said to be concrete "if the plaintiff's alleged injury bears a close relationship to the sort of harms traditionally recognized by American courts," where the courts must look for a close relationship in kind, not degree. *Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1151 (7th Cir. 2022) (cleaned up).

The risk of real harm in some instances can constitute a concrete injury. *Spokeo,* 578 U.S. at 341. The Supreme Court in *TransUnion* clarified its decision in *Spokeo*, holding, among other things, "that the mere risk of future harm, without more, [does not] suffice to demonstrate Article III standing in a suit for damages." *Id*. at 2211.

However, "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *Id*. at 2210. The Court further clarified that, to satisfy the injury-in-fact requirement, a harm or risk of harm must be appreciable, thereby exposing the plaintiff to a material risk of identity theft. *Id*. at 2210. To illustrate this point, the Supreme Court analogized the inaccurate credit report not sent to third parties to a defamatory letter. *Id*. If such a defamatory letter is written, but never sent, it "does not hurt anyone; no matter how insulting the letter is." *Id*. Therefore, the party asserting standing must demonstrate that the risk of future harm materialized. *Id*. at 2211. Thus, Williams only needs to show that one of the intangible injuries alleged by Barrientos is concrete and appreciable.

Applying the *TransUnion* framework here, the Court finds that Barrientos' alleged harm is not sufficiently concrete to support Article III standing. Barrientos pleads that violating the statute is the harm. More specifically, "by printing numerous transaction receipts in violation of this . . . federal statute, Defendant [Williams] has caused . . . an unjustifiably high risk of harm that was either known or so obvious that it should have been known." Compl. ¶ 43 (cleaned up). Barrientos pleads that the mere act of violating FACTA causes an elevated risk of harm, Compl. ¶¶ 1–2, although Williams argues that Barrientos does in fact plead intangible harms, Resp. at 5–6. All that Barrientos has alleged here is a statutory violation. As *TransUnion* makes clear, that without more, will not suffice. *TransUnion*, 141 S. Ct. at 2211.

14

The facts of this case are similar to those in a recent in-district case cited by Barrientos in her second notice of supplemental authority. In *Blanco v. Bath & Body Works, LLC*, 2022 WL 1908980 (N.D. Ill. June 3, 2022), the defendant merchant provided the plaintiff consumer with a "receipt that disclosed the first six and last four digits of her debit card." *Id.* at *1 (cleaned up). In granting plaintiff's motion to remand, the court found that the defendant had not shown that plaintiff's injury was traceable to the FACTA violation at issue. *Id.* at *2. Specifically, the court noted that the defendant "does not explain how Blanco's purported monetary harm from paying for what was supposed to be a secure and legally compliant transaction can be traced to its alleged violation of 15 U.S.C. § 168lc(g)(1)." *Id.* The court also rejected the defendant's contention that the plaintiff had standing based on her increased *risk* of identity theft, as there were no allegations that anyone acted on the information contained in the receipt or that an identity thief even saw the receipt. *Id.* at *3. The defendant's claim that the plaintiff had standing based on her invasion of privacy fared no better, as the court found no correlation between the allegation that the plaintiff's privacy was invaded when an employee handed her the receipt. *Id.* Accordingly, the court found that the defendant failed to show that the plaintiff had standing to bring her FACTA claim in federal court and remanded the case to state court. *Id.* at *4.

Like the defendant in *Blanco*, Williams cannot meet its burden of showing that Barrientos alleged an appreciable risk of harm. Barrientos has not pled that anyone other than herself and Williams' employee saw the receipt. Compl. ¶ 32. Indeed,

Barrientos alleges the opposite, that she was supplied a receipt that violated FACTA's truncation requirement of which caused her to "take action to safeguard the receipt." *Id.* ¶¶ 31–34. Williams has not pointed to any allegation in the complaint that implies a risk of harm, and without more, the Court cannot find an iota of risk of harm that supports an injury in fact.

The Court's analysis does not end here, however, as Williams contends that Barrientos' intangible injuries are concrete because they bear a close relationship to harms actionable under three common law tort theories. Resp. at 6–11 (citing *Ewing*, 20 F.4th at 1153).

### A. Common Law Analogues

The Court now turns to whether the common law analogs identified by Williams—breach of confidence, breach of implied bailment, and disclosure of private information—are sufficiently similar to the harms plead by Barrientos such that the injury-in-fact requirement is satisfied.

### 1. Breach of Confidence

First, the Court evaluates whether Barrientos' alleged injuries closely resemble those protected under the common law cause of action for breach of confidence such that it constitutes an injury in fact. Resp. at 6–8. "A common law breach of confidence lies where a person offers private information to a third party in confidence and the third party reveals that information to another." *Jeffries v. Volume Servs. Am., Inc.*, 928 F.3d 1059, 1064 (D.C. Cir. 2019) (cleaned up). Williams relies on

16

*Jeffries* in support of its proposition that breach of confidence resulting from a FACTA violation is an intangible harm which can support Article III standing. Resp. at 6–8.

In *Jeffries*, the defendant printed a receipt containing all sixteen digits of the plaintiff's credit card and its expiration date. *Id*. at 1062. The D.C Circuit Court held that the printing of the entire credit card number and the expiration date "creates a concrete injury in fact" and together "creates the nightmare scenario FACTA was enacted to prevent." 928 F.3d at 1066. Specifically, injury was concrete at the point of sale—which is when FACTA measures liability—because there was no way to know whether the customer would "recognize and safeguard the non-compliant receipt" or "whether the receipt would end up in the trash for anyone to find," providing enough information to defraud the customer. *Id*. at 1066–67. Further, the D.C. Circuit held that "FACTA's truncation requirement establishe[d] a similar relationship of trust between a consumer and merchant" and that that the statute "punishes conduct that *increases the risk* of third-party disclosure, not the actual disclosure" to a third party. *Id*. (emphasis in original). Williams maintains that the FACTA violation alleged by Barrientos resembles that of the common law breach of confidence. Resp. at 7–8.

Barrientos counters by citing an Eleventh Circuit case, *Muransky v. Godiva Chocolatier Inc.*, 979 F. 3d 917 (11th Cir. 2020). In *Muransky*, as in this case, the plaintiff received a receipt containing the first six and the last four digits of his credit card number in violation of FACTA from defendant's store. *Id*. at 922. Plaintiff filed a class action suit against the defendant alleging that the statutory violation caused the class irreparable harm and exposed them to a heightened risk of identity theft.

*Id.* The Eleventh Circuit sitting *en banc*, relying in *Spokeo,* held that the plaintiff failed to plead an injury in fact, and therefore lacked standing. *Id.* at 923–36. A plaintiff, explained the court, can plead and show standing in two ways: by showing that a statutory violation directly caused a harm, tangible or otherwise, or by showing that the violation created a risk of harm. *Id.* at 926-27. The plaintiff, observed the court, failed to do so in that case as he merely alleged a statutory violation; the right to receive a properly truncated receipt. *Id.* at 929.

Next, the Eleventh Circuit rejected plaintiff's argument that defendant's FACTA violation is analogous to a common law breach of confidence. *Id.* at 931. The court found that even setting aside whether a breach of confidence tort was traditionally redressable at common law, the alleged FACTA violation shared little resemblance to the beach of confidence tort. *Id.* at 931–32. Indeed, observed the court, "two key elements of a breach of confidence are completely absent from the violation [plaintiff] complain[ed] of. To begin, there was no 'disclosure to a third party[,]' [because] [plaintiff] was handed a receipt that bore his own information, and he does not allege that anyone else ever saw it. To describe this act as a 'disclosure' would distort the meaning of the term." *Id.* at 932. And because "no information was disclosed, and no confidential relationship existed, the relationship between [defendant's] conduct and a breach of confidence is anything but 'close.'" *Id.*

In the absence of Seventh Circuit precedent, the Court may look to other Circuit opinions for guidance. *Est. of Escobedo v. Bender*, 600 F.3d 770, 782 (7th Cir. 2010) ("In the absence of controlling precedent from our circuit, courts look to other

18

circuits to ascertain whether there was such a clear trend in the case law that the recognition of the right by a controlling precedent was merely a matter of time."). This Court finds *Muransky* persuasive, and *Jeffries* distinguishable. In *Jefferies*, the plaintiff suffered a harm greater than a few more than five digits of his credit card number exposed, as plaintiff's *entire* credit card number, expiration date, and name were exposed. This kind of violation is the most extreme and egregious violation of FACTA. As the court in *Jeffries* stated, the harm alleged in that case was not speculative, it was in fact imminent. 928 F.3d at 1067 ("The alleged violation of her statutory right has already occurred: there is nothing 'conjectural' or 'hypothetical' about it."); *see also Kamal v. J. Crew Group,* 918 F.3d at 116–17 (finding that the "analysis would be different if, for example, [the plaintiff] had alleged that the receipt included all sixteen digits of his credit card number, making the potential for fraud significantly less conjectural.").

On the other hand, the facts of *Muransky* are nearly identical to the ones here. The untruncated receipt exposed the first six and the last four digits, as opposed to statutory limit of five digits, and the receipt at issue was exchanged only between the consumer and the store employee. 979 F.3d at 921–22. But, as stated in *Muransky*, the confidential relationship is traditionally reserved for professional relationships such as physicians, therapists, and the like, not fleeting interactions between a customer and a cashier. *Id.* at 932. Rather than implicate a third-party as required by the common law, Barrientos pleads the opposite; she "took steps to safeguard the receipt." Compl. ¶ 34. Therefore, as in *Muransky*, the Court finds that the harm

19

stemming from common law breach of confidence is not analogous to the harm alleged here.

### 2. Implied Bailment

Next, Williams contends that the tort of implied bailment is analogous to the harm alleged. Resp. at 8–9. To successfully plead common law breach of implied bailment, the plaintiff must show "(1) an express or implied agreement to create a bailment; (2) a delivery of the property in good condition; (3) the bailee's acceptance of the property; and (4) the bailee's failure to return the property or the bailee's redelivery of the property in a damaged condition." *Toll Processing Servs., LLC v. Kastalon, Inc.*, 880 F.3d 820, 827 (7th Cir. 2018). Williams argues that Barrientos trusted Williams with her valuable financial information and because Williams failed to comply with FACTA, Williams "redelivered her sensitive card account information to her in a damaged condition by giving her a receipt with too many card digits." Resp. at 9 (cleaned up). As noted by Barrientos, none of the elements of breach of implied bailment are satisfied in this case. Reply at 8. Williams makes a perfunctory suggestion that a legal relationship exists between Barrientos and Williams, but no such relationship exists. Resp. at 9 ("At common law, mere breach of a legal relationship, without more, sufficed for legal injury."). Williams has not convinced the Court that common law breach of implied bailment is analogous to the intangible harms alleged here.

20

### 3. Disclosure of Private Information

In a last-ditch attempt to keep this case before the Court, Williams asserts that the intangible harm experienced by Barrientos is analogous to the tort of disclosure of private information. Resp. at 9–11. Williams cites *TransUnion* to support its proposition that the disclosure of private information is an intangible harm analogous to a common law tort. *Id.* at 10 (citing *TransUnion*, 141 S. Ct. at 2204 ("disclosure of private information . . . [has a] close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts")). True, but a key element of any breach of privacy claim or its progeny is a showing of a third party gaining unprivileged access to said private information. *See Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776, 780 (9th Cir. 2018).

"Courts have rejected this argument where, as here, the plaintiff has not identified a third party that improperly received private information." *Donahue*, 2019WL 13253793, at \*2 (citing *Bassett*, 883 F.3d at 780 (9th Cir. 2018)). Along those lines, *Blanco,* a case from within this District (and discussed above), held that there was no invasion of privacy (an umbrella term encompassing public disclosure of private information, *see* RESTATEMENT (SECOND) OF TORTS § 652H, cmt. A (1977)), when plaintiff's account information was allegedly disclosed to "employees who handed her the receipt and to the extent that information was exposed to other patrons, employees, and/or potential identity thieves." 2022 WL 1908980, at \*3. The court explained that "it does not necessarily follow that Blanco's privacy was invaded" from employees seeing her account information on the receipt, while her complaint

"d[id] not allege that other patrons, employees, or potential identity thieves actually saw [the] receipt or acted on it." *Id.* at *3–4. True, the *Blanco* court, as Williams points out, did not have the benefit of a fully developed argument from the defendant as to the common law analogues, whereas Williams presented a fulsome argument to the Court. Resp. 2d Suppl. Auth. at 2. No matter, because even after considering Williams' argument and authority, the Court finds it unavailing.

Here, Barrientos does not plead that any third party had access to the receipt; and Williams has not identified such a party. A third party must have had access to the private information to constitute a breach of privacy. *TransUnion LLC*, 141 S. Ct. at 2210 ("The mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm."); *see also Donahue*, 2019 WL 13253793, at *2; *Gesten v. Burger King Corp.*, 2017 WL 4326101, at *5 (S.D. Fla. Sept. 27, 2017) (holding that printing ten digits of a credit card number on a receipt in violation of FACTA, which was allegedly only seen by Burger King employees, did not amount to disclosure of private information because the "disclosure" at issue was no different than the "disclosure" that happens any time a consumer uses a credit card to pay for a transaction and it is not the type of harm that Congress identified in enacting FACTA.) (cleaned up).

Accordingly, the Court finds Williams has failed to demonstrate that the harm alleged by Barrientos closely resembles the harm actionable under the three common law theories advanced by Williams. As such, the Court finds that Williams has not

22

met its burden of establishing that Barrientos has alleged an injury in fact sufficient to confer standing.

The Court now turns to Williams' alternative argument that the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) (CAFA) provides an independent basis for federal jurisdiction. Resp. at 14.

### B. Class Action Fairness Act

Williams argues that CAFA provides an alternative basis for federal jurisdiction Resp. at 14. Williams points out that the parties are diverse; the proposed class action consist of more than 100 putative class members; and the amount in controversy exceeds CAFA's minimum threshold of $5,000,000. *Id*. Of course, even under CAFA, a plaintiff must still have Article III standing and the party invoking federal jurisdiction bears the burden of establishing that standing exists. *See Bryant*, 958 F.3d at 620. Williams contends, however, that the basis for jurisdiction matters because, unlike a case removed under § 1331 where the Court must resolve any doubt regarding jurisdiction in favor of remand, when CAFA is involved, there is no antiremoval presumption. Resp. at 14 (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)). Therefore, reasons Williams, because it invokes jurisdiction under CAFA, "even if the Court harbors doubts about [Barrientos'] Article III standing, the 'tie' would not go to" Barrientos. *Id*.

There is a problem, however, with Williams' alternative jurisdiction argument. "[A] removing defendant may not, after the 30-day deadline[8] has passed, add new or

---

[8]"[A] state-court defendant has 30 days to remove an action to federal court from receipt of the complaint or 'other paper' that clarifies the case has become removable. . . . Before the

different grounds for federal jurisdiction than those stated in the original notice." *Samori v. Ralphs Grocery Co.*, 2021 WL 1212798, at *4 (N.D. Ill. Mar. 31, 2021) (citing 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3733 (rev. 4th ed. 2020)). Here, Williams, in its notice of removal filed on September 29, 2021, cited only 28 U.S.C. § 1331 as the basis for removal. Not. Removal at 2 ("The Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 because it involves a federal question."). Therefore, it cannot at this late stage, change horses midstream and argue that the Court has jurisdiction under CAFA. This means that any doubt regarding Article III standing must, indeed, be resolved in favor of remand. *Schur,* 577 F.3d at 758.

The Court having resolved Barrientos' motion to remand, now turns to her motion for attorney's fees.

## II.    Attorneys' Fees

Under 28 U.S.C. § 1447(c), attorneys' fees can be awarded "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "An award of fees and costs is discretionary with the court." *Castellanos v. U.S. Long Distance Corp.*, 928 F. Supp. 753, 756–57 (N.D. Ill. 1996) (cleaned up). Section § 1447(c) "is not a sanctions rule; it is a fee-shifting statue, entitling the district court to make whole the victorious party." *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000). "Because § 1447(c) is a

---

30-day period for removal expires, a removing defendant may freely amend its notice of removal. However, once the 30-day removal period has passed, a removing defendant may not add new or different grounds for federal jurisdiction." *Brooks v. USA Track & Field, Inc.*, 2023 WL 3016831, at *2 (S.D. Ind. Mar. 7, 2023).

fee-shifting statute, the plaintiffs as prevailing parties are presumptively entitled to recover the attorneys' fees incurred in defending their award." *Id.* at 411.

The Supreme Court has held that a court may only order the payment of all fees and costs resulting from the removal when "the removing party lacked an objectively reasonable basis for seeking removal." *Martin*, 546 U.S. at 141. In ascertaining whether to impose fees, the court may determine whether "removal was unjustified under settled law," *Garbie*, 211 F.3d at 410, as well as the case's complexity, *Katonah v. USAir, Inc.*, 876 F. Supp. 984, 990 (N.D. Ill. 1995) ("One factor to consider in assessing the propriety of removal is the complexity of the case.").

Barrientos argues for an award of fees and, in support, points to *Mocek v. AllSaints USA Ltd.*, 220 F. Supp. 3d 910 (N.D. Ill. 2016), where the court awarded attorneys' fees for an unreasonable removal of a FACTA case. Mot. Remand at 8. Williams retorts that removal was not unreasonable and emphasizes that *Mocek* is easily distinguishable. Resp. at 20 (citing *Mocek,* 220 F. Supp. at 911). The Court agrees with Williams.

In *Mocek*, the defendant removed the putative class action alleging violations of FACTA to federal court pursuant to 28 U.S.C. § 1441. After removal, the defendant moved to dismiss for lack of jurisdiction based on the absence of any injury-in-fact. *Id.* at 911. The plaintiff in turn, moved to remand the case to state court based on a lack of federal jurisdiction. *Id.* The district court granted the motion to remand without deciding whether plaintiff had standing, because both parties agreed that federal jurisdiction was lacking. *Id.* at 912. The court then granted the plaintiff's

25

motion for attorney's fees, finding that under theses circumstances, the defendant "lacked an objectively reasonable basis for seeking removal." *Id*.

Here, unlike *Mocek*, the issue of Barrientos' standing was very much disputed. Moreover, "[t]he law concerning whether plaintiffs have Article III standing to pursue FACTA claims in federal court is evolving." *Blanco*, 2022 WL 1908980, at *4 (citing *Donahue*, 2019 WL 13253793, at *3). In light of the evolving law, Barrientos' complaint—including allegations of monetary harm, elevated risk of identity theft, and other intangible harms—is not devoid of any allegations of harm that could reasonably satisfy the Article III inquiry. *See id*. Therefore, it was not objectively unreasonable for Williams to assert that removal was proper.

While a close call, the Court, in the exercise of its discretion, concludes an award pursuant to 28 U.S.C. § 1447(c) is not appropriate in this case. Barrientos has not provided evidence that this case was removed for the purpose of prolonging litigation or increasing Barrientos' costs in litigating the case. Although the Court ultimately found unpersuasive the arguments advanced by Williams in support of removal, the removal was not objectively unreasonable. Therefore, Court denies Barrientos' request for fees.

## Conclusion

For the foregoing reasons, the Court grants Barrientos' motion to remand this case to the Circuit Court of Cook County, Illinois [15]. The Clerk's Office is directed

to remand this case to the Circuit Court of Cook County, Illinois forthwith. The Court denies Barrientos' request for attorney's fees. This civil case is terminated.

Dated: September 1, 2023

United States District Judge
Franklin U. Valderrama